IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| BRIAN ADONIS ISLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 325-059 |
| ) | |
| MEDICAL DEPARTMENT AT JOHNSON ) | |
| STATE PRISON and JOHNSON STATE ) | |
| PRISON, ) | |
| ) | |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Ware State Prison in Waycross, Georgia, filed this case pursuant to 42 U.S.C. § 1983 concerning events alleged to have occurred at Johnson State Prison. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.  SCREENING THE COMPLAINT**

**A.  BACKGROUND**

Plaintiff names as Defendants (1) Medical Department at Johnson State Prison and (2) Johnson State Prison. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On January 24, 2025, at Johnson State Prison, multiple inmates attacked and robbed Plaintiff. (Id. at 5.) As a result of the attack, Plaintiff's ribs were broken, and he was denied adequate medical treatment for this injury for several months. (Id.) Specifically, Plaintiff did not visit the medical department until April 23, 2025, when medical staff "called [Plaintiff] up for blood to be drawn for mental health." (Id.) At this visit, medical staff informed Plaintiff there was nothing they could do for his broken ribs. (Id.) On April 30, 2025, Plaintiff received an x-ray of his ribs. (Id.) He did not see a doctor until May 1, 2025. (Id.)

Plaintiff is in constant pain from his broken ribs. (Id.) He put in four sick calls to renew his ibuprofen subscription for the pain, which "feels like a thousand[] bee's [sic] stinging [him] at one time." (Id.) Plaintiff also experiences pain when he takes deep breaths, as well as stress, anxiety, and headaches. (Id.)

For relief, Plaintiff seeks $2 million from Defendant Medical Department at Johnson State Prison, $2 million from Defendant Johnson State Prison, and an additional $ 1 million "for delay on [a]dequate medical treatment." (Id. at 6.)

**B.    DISCUSSION**

**1.    Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490

(11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

**2.      Plaintiff Fails to State a Claim for Relief Against Defendants**

Plaintiff fails to state a claim against Defendants Johnson State Prison and Medical Department at Johnson State Prison because they are not "persons" capable of being sued under § 1983. Appropriate parties for suit under § 1983 included "persons" who participated in

3

the alleged violation.  See 42 U.S.C. § 1983 (subjecting only "persons" to liability); Ga. Insurers Insolvency Pool v. Elbert Cnty., 368 S.E.2d 500, 502 (Ga. 1988) (limiting § 1983 liability to "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue") (quotations omitted); Herrington v. Effingham Cnty. Sheriff's Off., CV 411-099, 2011 WL 2550464, at *1 (S.D. Ga. Apr. 21, 2011).

First, Johnson State Prison is not an entity capable of being sued.  See Parks v. Georgia, No. CV 517-047, 2017 WL 2930832, at *3 (S.D. Ga. July 10, 2017) (explaining "penal institutions are entities which are not capable of being sued, as they are buildings"); see also Brannon v. Thomas Cnty. Jail, 280 F. App'x 930, 934 n.1 (11th Cir. 2008) (*per curiam*) (noting "Thomas County Jail is not entity capable of being sued under Georgia law"); Clark v. Georgia, Civ. Act. No. 1:21-CV-3396, 2021 WL 8084671, at *3 (N.D. Ga. Nov. 8, 2021) (explaining state prison not an entity capable of being sued), *adopted by* 2022 WL 898362 (N.D. Ga. Mar. 28, 2022); Smith v. Chatham Cnty. Sheriff's Dep't, No. CV 412-224, 2012 WL 5463898, at *2 (S.D. Ga. Oct. 22, 2012) ("[T]he [county jail] is not a legal entity capable of being sued."), *adopted by* 2012 WL 5463762 (S.D. Ga. Nov. 8, 2012); Sebastian v. Maynard, No. 5:10-CV-221, 2010 WL 3395040, at *2 (M.D. Ga. July 12, 2010) ("The Lamar County Detention Center is not a legal entity that is subject to suit under 42 U.S.C. § 1983."), *adopted by* 2010 WL 3395154 (M.D. Ga. Aug. 21, 2010).  Thus, Plaintiff fails to state a claim against Johnson State Prison.

Furthermore, a medical department or unit "cannot be sued under § 1983, because it is not a person." Murphy v. Turpin, 159 F. App'x 945, 949 n.4 (11th Cir. 2005); see also Jordan v. Georgia, No. 5:20-cv-76, 2021 WL 1823562, at *2 (S.D. Ga. Apr. 6, 2021) ("[A] medical department operated by a state's department of corrections [is] not considered [a] "person[]"

4

under § 1983."), *adopted by* 2021 WL 1823387 (S.D. Ga. May 6, 2021). Accordingly, Plaintiff's claims against Defendant Medical Department at Johnson State Prison should be dismissed for failure to state a claim.

In sum, for the reasons described above, Plaintiff fails to state a claim against both Defendants. Furthermore, as explained below, he also fails to state a claim because he did not properly exhaust administrative remedies.

### 3. Plaintiff Also Fails to State a Claim Upon Which Relief Can Be Granted Because He Did Not Exhaust Administrative Remedies

#### a. The Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (*per curiam*); Solliday v. Fed. Officers, 413 F. App'x 206, 208 (11th Cir. 2011) (*per curiam*); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002).

Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Rather, "[t]his provision entirely eliminates judicial discretion and instead mandates

5

strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'"  Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims.  Johnson, 418 F.3d at 1159; see also McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) ("The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." (citation omitted)).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."  Porter, 534 U.S. at 524.

6

### b. Administrative Grievance Procedure

Inmates like Plaintiff under the supervision of the Georgia Department of Corrections ("DOC") are subject to the Statewide Grievance procedure governed by the version of the DOC Standard Operating Procedure that resulted in the promulgation of Policy Number ("PN") 227.02, which became effective May 10, 2019.[1] The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (C)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the

---

[1]The DOC policy cited herein is publicly available. See https://public.powerdms.com/GADOC/documents/105711 (last visited Aug. 12, 2025).

date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § IV(C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § (C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

### c. Plaintiff's Failure to Exhaust

In his complaint, dated May 8, 2025, Plaintiff states he filed a grievance at Johnson State Prison, which was denied for improperly containing more than one issue, and concedes he never filed an appeal to the central office prior to filing the instant lawsuit. (Doc. no. 1, pp. 3-4, 6.) The face of Plaintiff's pleading makes clear he did not complete the two-step grievance process because he did not file an appeal. Plaintiff improperly bypassed the appeals process when he decided not to file a central office appeal.

Allowing Plaintiff to decide for himself to bypass the grievance process defeats the rationale behind requiring "proper exhaustion":

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to

8

> federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (*per curiam*) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison.").

Similarly here, allowing Plaintiff to proceed in federal court despite his decision to short-circuit the grievance process by not filing an appeal would defeat the aims of the PLRA to review the merits of a prisoner's claim(s), and would not promote "the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy." Johnson, 418 F.3d at 1159. The PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Id. Additionally, because proper exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of Plaintiff's complaint, indeed he concedes, that he failed to complete the entire grievance process prior to commencing this case because he did not file a central office appeal.

In sum, Plaintiff did not properly exhaust his available administrative remedies, and therefore, the complaint fails to state a claim upon which relief can be granted. See Solliday,

9

413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted).

## II.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the case be **DISMISSED** failure to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 12th day of August, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA